KOBLITZ, J.A.D.
*514 This appeal requires us to address certain legal questions that arise when a case that involves the custody of a child under a Title 9 abuse or neglect FN complaint filed by the Division of Child Protection and Permanency (Division) is interrupted by a private custody case initiated by a member of the child's family. To ensure legal protection for the parents, we suggest a method of handling FD non-dissolution complaints when they are heard in the midst of FN litigation.
Defendant S.D., the mother of seven children, appeals from both a February 24, 2015 finding that she educationally neglected her six-year-old daughter and a November 19, 2015 order dismissing the FN litigation, leaving the children in the custody of two grandmothers under FD orders. The Division held legal custody of the children after they were removed from their mother in a still-open FN matter before the FD hearing was held. The Deputy Attorney General representing the Division participated in the FD hearing, although the Division was not named as a defendant. The mother's counsel did not participate in the hearing, although the mother was named as the defendant in the FD complaints. We disapprove of this procedure, although we find no harm to the mother under these particular circumstances, and affirm. We also *515 affirm the finding of educational neglect and the dismissal of the litigation over the objection of defendant.
In March 2012, the Division began its involvement with this family when it received a referral regarding substance abuse by the parents. The Division provided services and monitoring without filing a complaint in court.
Two years later, on March 18, 2014, the Division sought custody of defendant's seven children pursuant to N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12. At the hearing, defendant's mother, Sh.D., testified that defendant and the children could live in her apartment until defendant could find a more stable living arrangement, a plan the court accepted.
The children were later removed by the Division from the mother's custody on April 29, 2014, through an emergency Dodd removal.[2] The Division conducted the removal because six-year-old K.D. was not attending kindergarten. The children were returned to defendant's care three days *981 later. The judge ordered defendant to engage in services including psychological evaluations, drug and alcohol screenings, substance abuse treatment meetings, and anger management counseling. The judge also ordered defendant to enroll K.D. in school by May 5, 2014, four days from the date of the hearing.
Two months later, the Division filed an amended complaint for custody, care and supervision of the children. The trial court held a case management conference on July 14, 2014. At this conference, the Division explained that there had been an altercation between defendant and her oldest daughter, A.D., who left defendant's home to live with the child's father.
In August 2014, the trial court held a review hearing. At this hearing, defendant was arrested and taken into custody because of *516 her failure to appear at a truancy hearing regarding K.D. The court granted the Division custody of the remaining six children including K.D., and the children were placed with their maternal grandmother, Sh.D.
The trial court held a fact-finding hearing in February 2015, followed immediately by a custody hearing under FD docket numbers, and placed the seven children in the legal custody of their grandmothers. A.D. was placed in the legal custody of her paternal grandmother and the other children in the legal custody of Sh.D.
Defendant presents the following arguments on appeal:
POINT I: THE COURT ERRED IN FINDING THE DEFENDANT WILLFULLY AND WANTONLY FAILED TO ENROLL HER DAUGHTER IN SCHOOL.
POINT II: THE COURT FAILED TO CONDUCT AN EVIDENTIARY HEARING AND APPLIED THE INCORRECT STANDARD WHEN IT DENIED THE DEFENDANT REUNIFICATION IN VIOLATION OF THE DEFENDANT'S RIGHT TO DUE PROCESS.
POINT III: THE COURT ERRED IN TERMINATING THE LITIGATION IN VIOLATION OF THE DEFENDANT'S DUE PROCESS RIGHTS.
FACT-FINDING
At the fact-finding hearing, the Division first called John Ross, supervisor of student attendance for the Jersey City School District, who had received a referral from a community aide in charge of attendance. K.D. was six years old and had accumulated "54 undocumented, unexcused absences" by the end of March 2014. The family was living at the Howard Johnson hotel in North Bergen. Ross visited the family with truancy officers.
Public School 38 (PS38) in Jersey City did not have room for K.D. in its kindergarten program, so she was assigned to a different school. A school bus was available to transport K.D. to and from the hotel. Ross testified that defendant and S.S., K.D.'s father, were not willing to have K.D. transported via bus to school. He indicated that K.D. missed 105 days of the 2013-2014 school year.
*517 Defendant first testified that before she moved into the Howard Johnson hotel, K.D. attended Public School 8 (PS8). After the family moved to the hotel, she placed two of her other children in PS38 and K.D. in Public School 23 (PS23). She then testified she actually did not place K.D. in school because she wanted her in PS38, not PS23, which was "across town." The court questioned defendant as to why she refused to enroll K.D. in PS23, and defendant replied "if in the case of an emergency I wouldn't have been able to get to her in time." She said she felt strongly about *982 not having K.D. attend PS23 and therefore chose not to send her to school.
The court found that K.D. had not attended school since December 2013. Referencing N.J.S.A. 18A:38-25, the statute that requires parents to ensure their children attend school between the ages of six and sixteen, the court found defendant was grossly negligent, and acted willfully and wantonly in not allowing K.D. to attend school for more than three months. The court acknowledged defendant's desire to have K.D. attend a specific school, but concluded that keeping her out of school was "not the appropriate way to deal with it."
"A 'fact-finding hearing is a critical element of the abuse and neglect process,' because the court's 'determination has a profound impact on the lives of families embroiled in this type of a crisis.' " N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 87-88, 946 A.2d 62 (App. Div. 2008) (quoting N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264-65, 800 A.2d 132 (App. Div. 2002) ). In a Title 9 abuse or neglect case, the focus "is not the 'culpability of parental conduct' but rather 'the protection of children.' " N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368, 175 A.3d 942 (2017) (quoting Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178, 121 A.3d 832 (2015) ).
When reviewing Title 9 cases, we "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the *518 stand" and "has a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43, 990 A.2d 1097 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104, 952 A.2d 436 (2008) ). " '[A]ppellate courts should accord deference to family court factfinding' in recognition 'of the family courts' special jurisdiction and expertise in family matters.' " A.B., 231 N.J. at 365, 175 A.3d 942 (quoting Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998) ).
"The main goal of Title 9 is to protect children 'from acts or conditions which threaten their welfare.' " G.S. v. Dep't of Human Servs., 157 N.J. 161, 176, 723 A.2d 612 (1999) (quoting State v. Demarest, 252 N.J. Super. 323, 330, 599 A.2d 937 (App. Div. 1991) ). Title 9 effectively balances a parent's constitutional right "to raise a child and maintain a relationship with that child, without undue interference by the state," against "the State's parens patriae responsibility to protect the welfare of children." N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 18, 59 A.3d 576 (2013) (quoting E.P., 196 N.J. at 102, 952 A.2d 436 and In re Guardianship of K.H.O., 161 N.J. 337, 347, 736 A.2d 1246 (1999) ).
N.J.S.A. 9:6-8.21(c)(4) defines a child as abused or neglected if the child's "physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent ... to exercise a minimum degree of care (a) in supplying the child with adequate ... education ...." To prove abuse or neglect under N.J.S.A. 9:6-8.21(c)(4), the Division "must establish by a preponderance of the evidence that: (1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care." A.B., 231 N.J. at 369, 175 A.3d 942.
"The reference to education contained in N.J.S.A. 9:6-8.21(c)(4)(a) concerns parental encouragement to truancy of a *519 school *983 age child, or other interference with normal educative processes." Doe v. Downey, 74 N.J. 196, 199, 377 A.2d 626 (1977) (quoting Doe v. G.D., 146 N.J. Super. 419, 431, 370 A.2d 27 (App. Div. 1976) ). Parents are required to ensure their children attend public school or receive equivalent instruction to that provided in the public schools. N.J.S.A. 18A:38-25 ; Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 641, 826 A.2d 624 (2003).
We have recognized that a parent's failure to provide an education is a form of neglect under Title 9. See, e.g., N.J. Div. of Youth and Family Servs. v. M.W., 398 N.J. Super. 266, 285-86, 942 A.2d 1 (App. Div. 2008) (noting a parent harmed her children through educational neglect by allowing them to be deprived of the physical ability to attend school).
Here, K.D. stopped attending PS8 on December 9, 2013 when the family moved. Two of defendant's other children attended PS38 but she was unable to enroll K.D. in that school because the school lacked adequate space. Defendant was then informed that K.D. could be bused to PS23 at no cost to her. Instead of accepting this proposal and enrolling K.D. in PS23, defendant chose not to send K.D. to school. Even after a court order, defendant failed to enroll her in school. At the fact-finding hearing, the Division provided evidence that K.D. missed over one hundred days of school. As the court found, this educational neglect constitutes gross negligence.
DISPOSITIONAL HEARING
Defendant's second argument is that the trial court failed to conduct an evidentiary hearing using the appropriate standard of review when it denied reunification after the FN fact-finding hearing. After a fact-finding hearing in which the court determines neglect occurred, a dispositional hearing may commence immediately or at a later time. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 399, 968 A.2d 698 (2009) (citing N.J.S.A. 9:6-8.47 ). The dispositional hearing is necessary to determine the *520 appropriate outcome of the case and the court may consider "only material and relevant evidence." Ibid. (citing N.J.S.A. 9:6-8.50 ; N.J.S.A. 9:6-8.46(c) ). In determining the appropriate disposition, the court may:
enter a suspended judgment, N.J.S.A. 9:6-8.52 ; release the child to the custody of the parent or guardian responsible for the child's care at the time of the filing of the complaint, N.J.S.A. 9:6-8.53 ; place the child with "a relative or other suitable person," N.J.S.A. 9:6-8.54(a) ; make an order of protection, N.J.S.A. 9:6-8.55 ; place the offending parent or guardian on probation, N.J.S.A. 9:6-8.56 ; and/or require the offending person to accept therapeutic services, N.J.S.A. 9:6-8.51(a). In all cases the court "shall state the grounds for any disposition made." N.J.S.A. 9:6-8.51(b).
[ Id. at 399-400.]
The dispositional hearing is a critical stage in the Title 9 proceedings. Id. at 401, 968 A.2d 698. The hearing "must be conducted 'with scrupulous adherence to procedural safeguards.' " Ibid. (quoting N.J. Div. of Youth & Family Servs. v. A.R.G., 179 N.J. 264, 286, 845 A.2d 106 (2004) ). Witnesses at the hearing "should be under oath and subject to cross-examination." Ibid.
In G.M., the court held a fact-finding hearing and concluded that the mother abused or neglected the children. 198 N.J. at 391, 968 A.2d 698. The Division sought to dismiss the litigation because the children were safe with their father and the mother was enrolled in services. Ibid. The court denied this motion to dismiss the *984 litigation and ordered the mother to continue services. Ibid. At the next conference, the Division again sought to dismiss the litigation but the court declined to do so because the mother was still in active treatment. Id. at 392, 968 A.2d 698. At a subsequent conference, without taking testimony or admitting evidence, the trial court granted the Division's request to terminate the litigation and ordered that any change in custody be addressed through the matrimonial docket. Id. at 393, 968 A.2d 698.
Our Supreme Court reversed, concluding that "[t]he key deficiency of the proceeding below was ... the failure to hold a dispositional hearing." Id. at 402, 968 A.2d 698. The Law Guardian and Division, without notice to the mother, changed their position as to whether the children should remain with their father or be *521 returned to the mother. Id. at 401, 968 A.2d 698. The Court said, "the Division should have focused on whether the children could be safely returned to the custody of their mother." Id. at 402, 968 A.2d 698.
The Court remanded for a dispositional hearing, instructing the trial court to determine "whether the children may safely be released to the custody of their mother, who was responsible for their care at the time of the filing of the complaint, or whether, consistent with N.J.S.A. 9:6-8.51, some other disposition is appropriate." Ibid.
Here, immediately following the February 2015 fact-finding hearing in which the court found educational neglect, the court held a custody hearing under FD dockets regarding Sh.D. and the paternal grandmother's requests for custody. Defense counsel did not object to the procedural transition to FD from FN, nor seek to attend the FD hearing. Neither did the Law Guardians.[3]
Sh.D. had stated months before the FD hearing that her federally-subsidized Section 8 housing[4] was in jeopardy without a court order granting her custody. She risked eviction from her apartment due to having too many people residing there. With a court order, she would be eligible for a larger subsidized apartment. The FD complaint was accepted by court staff and sent to the judge handling the Children in Court[5] matter for the judge to "determine the next action to be taken regarding the custody complaint." Non-Dissolution Operations Manual, Superior Court of New Jersey, Family Division, § 1107 (Dec. 12, 2007), https:// www.njcourts.gov/courts/assets/family/nondissolutionmanual.pdf *522 . (last visited Feb. 21, 2018). The caption of the FD complaint, completed by court staff, did not include the Division, although the Division had legal custody of the children. The court decided to hold a separate FD hearing, after which legal custody of the six youngest children was awarded to Sh.D.[6]
The court cautioned Sh.D. that she would likely not receive a subsidy from the Division for the six children if she had legal custody, rather than only the placement of the children pursuant to an FN order. Section 472(a)(2) of the Adoption *985 and Safe Families Act, codified at 42 U.S.C. § 672, requires responsibility for the child's placement and care to be with the State agency for the agency to be eligible for federal funding for that child. When the court orders that custody be transferred to an individual, the child becomes ineligible for Title IV-E funding. 45 C.F.R. § 1356.21(g) notes this restriction.
Sh.D. explained that she wanted what was best for her family:
I just want physical custody so my daughter is able to get herself together and that the children will one day be able to return to her because they have been together since they've been born, and I would like to keep them together, you know? I love them, and I've been in their life from the [beginning] and I want to keep them.
The court told defendant at the end of the FN fact-finding hearing she would not be reunited with her children at that time because she had not completed needed services. She did not disagree in the FD hearing with giving legal custody of her six younger children to her mother. She objected only that custody of her eldest child, A.D., was awarded to the paternal grandmother, but the maternal grandmother had not sought custody of A.D. in her FD complaint. Subsequently, defendant acquiesced in the paternal grandmother's custody of the eldest child, seeking visits with this child on alternate weekends.
*523 Thus, although defendant was not represented by counsel, she was ultimately in agreement with the custody decisions. It would have been appropriate for the court to have held a joint FN dispositional and FD custody hearing at which defendant was afforded counsel.[7] Or, the FD filings by the grandmothers could have been considered part of the FN litigation without the additional FD designation. The FD custody hearing was an integral part of the Children in Court litigation. The Division had legal custody of the children and should have been a named defendant in the FD actions if they were to proceed as a stand-alone proceeding. If defendant had been represented, she may well have consented to the results, which were undertaken to allow six of the children to remain with their maternal grandmother in appropriate housing. The legal ramifications of legal custody versus placement would be understood by an attorney, but likely not by a parent. To allow defendant to represent herself, especially in light of her inappropriate comments and behavior in court, was erroneous. Given the mother's consent to the result, however, and the approximately three-year passage of time since the decision,[8] we see no reason to remand for a new hearing.
DISMISSAL OF FN LITIGATION
The case remained in litigation in the FN docket and the court held compliance review hearings on May 7, August 20, and November 19, 2015. At the conclusion of the August 2015 hearing, the Division indicated its desire to dismiss the litigation at the next hearing but the court ruled that it would not set a dispositional hearing.
*524 At the November 2015 hearing, before a different judge, the Division explained that A.D.'s paternal grandmother had custody of her and Sh.D. had custody of the six youngest children through FD
*986 orders. The Division then again requested dismissal of the litigation. Defendant objected to the dismissal, saying that she wanted the litigation to continue to give her a further opportunity to complete the court-ordered services and then be ready for reunification with her children. The court responded that defendant "can still do services and come back under the FD docket." The Division explained that the dismissal would not prevent defendant from cooperating with the Division and the case would remain open within the Division. The court agreed and dismissed the litigation, stating that the "children are safe in the custody of their caregivers, and the mother is complying, and the Division will continue to assist her." Under the order dismissing the litigation, defendant was referred to additional services.
The Division argues that because the case remained in litigation for twenty months and defendant failed to complete services, the case was properly dismissed from litigation. The Law Guardian states that since defendant consented to the six children's custody arrangement with her mother in the FD litigation, and eventually acquiesced in A.D.'s custody arrangement with the paternal grandmother, she could not reasonably expect a dispositional hearing to be held at the end of the FN litigation, especially because she admitted she was not yet ready to resume custody of the children.
Defendant did concede that she was not yet ready to resume custody of her children, but she wanted the litigation to remain open until a future date when she would be rehabilitated. Parents do not have the right to extend litigation indefinitely until they are able to safely care for their children, nor does defendant cite to any legal authority to support this position. Most often parents prefer to end litigation so as not to risk the termination of their parental rights after a long-term placement of their children outside the home. See N.J.S.A. 30:4C-61.2. Because of the unusual *525 insertion of an FD hearing here, the Division did not have legal custody of the children, so defendant was not at risk of losing her parental rights.
We recognize the practical importance of allowing the six children to remain in placement with the maternal grandmother by awarding her legal custody, and recognize that here defendant did not oppose that placement arrangement. Defendant had previously been living with the grandmother and the children. A larger, more appropriate housing situation for the children without a disruption in placement benefited the children, as defendant recognized. The court's technical designation of a hearing as FD or FN should not hamper the court's mission to safeguard the welfare of children.[9] When unusual procedures are undertaken, however, it is crucial to ensure that the parents are represented by counsel. Counsel are statutorily appointed for indigent parents only in Children in Court cases. N.J.S.A. 9:6-8.43(a), 9:6-8.30(a), 30:4C-15.4(a). Designating a hearing as a combination FD/FN hearing would ensure the participation of defense counsel and the Law Guardian, and should have occurred here.
Affirmed.

A Dodd removal is an emergent removal of a minor without a court order pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82. N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210, 215 n.2, 161 A.3d 132 (App. Div. 2017).

The Law Guardians support the position of the Division in this appeal.

Section 8 of the United States Housing Act of 1937 is codified at 42 U.S.C. § 1437f.

"Children in Court" cases refer to matters brought under Title 9 for abuse or neglect and matters brought under Title 30 for termination of parental rights. See Div. of Youth & Family Servs. v. M.D., 417 N.J. Super. 583, 619, 11 A.3d 381 (App. Div. 2011).

We directed defendant to provide us with a copy of the transcript of the FD custody hearing and then allowed the parties to submit supplemental briefs.

In addition to the standard comprehensive FN order, the court could also have generated an order regarding the custody determination alone, for Sh.D.'s use in obtaining housing.

Although the Rules require the Division to notify us of a change in placement pending appeal, Rule 2:6-11(f), no such requirement exists for the grandmother, who is not a party to this appeal.

Under the doctrine of parens patriae, Family Part judges have the responsibility to protect children in their role as civil litigants and are empowered to intervene to protect them from both physical and emotional harm. Segal v. Lynch, 413 N.J. Super. 171, 188, 993 A.2d 1229 (App. Div. 2010).