# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4745-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

B.C.,[1]

     Defendant-Appellant,

and

F.C.,[2]

     Defendant.

_____

_____

[1]  Initials and pseudonyms are used to protect the identities of the parties involved in this appeal.  R. 1:38-3(12).

[2]  Defendant F.C. is not a party to this appeal as plaintiff lodged no allegations against him following its investigation into a report of educational neglect against both defendants.

IN THE MATTER OF
E.C., E.C., AND F.C.,

      Minors.

_____

Submitted June 3, 2020 – Decided July 6, 2020

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0419-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Laura M. Kalik, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant B.C. appeals from a November 2, 2018 fact-finding order which determined she was responsible for the educational neglect of her

children.  We affirm, substantially for the reasons expressed by Judge Linda L. Cavanaugh in her thoughtful oral opinion.

B.C. and defendant F.C. are the biological mother and father, respectively, of E.C. ("Ethan"), E.C. ("Evan"), and F.C. ("Fiona").  On March 19, 2018, plaintiff Division of Child Protection and Permanency (Division) received a referral from the children's school regarding their excessive absences and tardiness throughout the school year.  By the time the referral was made in the 2017-2018 school year, Ethan was absent thirteen days and tardy forty-five times, Evan was absent nineteen days and tardy fifty-one times, and Fiona was absent twenty-four days and tardy forty-nine times.  According to a school official, none of the absences were excused with doctor's notes.

During its investigation, the Division learned the children were not performing at their grade levels, were in danger of failing the school year and might have to repeat their grade levels.  The school informed the Division that letters were sent to defendants regarding their children's absenteeism.  According to a representative from the school, when staff met with defendants to discuss the unexcused absences, B.C. would leave the meeting.  The children's guidance counselor confirmed that defendants came to the school at least six times for meetings but defendants blamed each other for the children's tardiness

and absences. Moreover, the guidance counselor remarked to the Division caseworker that when students were absent as often as Ethan, Evan, and Fiona, the school would send letters to, and meet with, the parents, and offer schooling on Saturdays. In this case, the school provided all three remedies. Ethan was the only one who attended school on Saturdays.

On March 27, 2018, the caseworker interviewed Evan and Fiona. She interviewed Ethan the following day. Evan stated he often was absent from school because he contracted various illnesses. Further, he explained he frequently was tardy because he and his siblings did not "pay attention to the time" when they walked to school. He added that his father, who resided outside the home, used to drive the children to school, but his car broke down, and his grandmother told his mother she was "spoiling" them by driving them to school.

Similarly, Fiona attributed her absences from school to illness. Moreover, she admitted she was tardy about once a week because she did not walk fast enough. Also, she revealed she was bullied at school, but her parents, guidance counselor, and principal were aware of this problem.

When the caseworker interviewed Ethan, he acknowledged he was late for school because he woke up late or had to wait for his siblings. He stated that

A-4745-18T3

either his mother would wake him up or his father would schedule a wakeup call.

B.C. was interviewed by the caseworker on March 27, 2018. According to B.C., the children walked to school because she wanted them to learn responsibility. She claimed she woke the children at 6:00 a.m. on schooldays and that they left for school around 7:20 a.m. B.C. acknowledged her children often were tardy, but she maintained the school did not notify her about the severity of the issue for two months. Further, she explained the children missed school due to illness.

B.C. conceded Ethan was the only child who attended school on Saturdays because Evan and Fiona did not wish to participate in this program. B.C. also commented that she suspected the children's school referred this matter to the Division in retaliation for her complaining her daughter was bullied in school.

In May 2018, the Division filed an order to show cause and verified complaint seeking care and supervision of Ethan, Evan, and Fiona. This application was granted. The next month, certified school records reflected the following: Ethan failed a number of classes, received a D+ in Mathematics, and earned C's in the remainder of his courses; Evan failed three classes, received D's in four classes, and a B in one class; Fiona received D's in four classes, a C-

in one class and B+'s in three classes. The school records also indicated Ethan was absent twenty-five days, eight of which were excused, and tardy sixty-five days. Evan was absent thirty-five days, twelve of which were excused, and tardy sixty-eight days. Fiona had forty-two absences, sixteen of which were excused, and seventy tardies.

The Division's investigator testified at the November 2, 2018 fact-finding hearing. When the hearing concluded, Judge Cavanaugh rendered an opinion from the bench, finding the Division proved by a preponderance of the evidence that B.C. educationally neglected her children as she "did not ensure her children attend[ed] school in a consistent and timely manner." On May 3, 2019, the trial court terminated the protective services litigation, leading to the instant appeal.

On appeal, B.C. argues that "the trial court's decision must be reversed because there was insufficient evidence to support a finding that [B.C.] abused or neglected her children by failing to ensure that they received an adequate education." We disagree.

Appellate review of a trial court's decision is limited. An appellate court owes special deference to the factual findings of a Family Part Judge. Cesare v. Cesare, 154 N.J. 394, 413 (1998). This is appropriate because a Family Part Judge "has the superior ability to gauge the credibility of the witnesses who

testify before [the judge who] . . . possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 430, 448 (2012). However, a family court's legal conclusions are reviewed de novo. N.J. Div. of Child. Prot. & Permanency v. K.G., 445 N.J. Super. 324, 342 (App. Div. 2016).

A child is abused or neglected if the child's

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent . . . to exercise a minimum degree of care (a) in supplying the child with adequate . . . education . . . .
>
> [N.J.S.A. 9:6–8.21(c)(4).]

In order to prove abuse or neglect under N.J.S.A. 9:6-8.21(c)(4), the Division "must establish by a preponderance of the evidence that: (1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care." N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017).

It is well established that

> [p]arents are required to ensure their children attend public school or receive equivalent instruction to that provided in the public schools. N.J.S.A. 18A:38-25 [(citation omitted)].

7

> We have recognized that a parent's failure to provide an education is a form of neglect under Title [Nine]. See, e.g., N.J. Div. of Youth and Family Servs. v. M.W., 398 N.J. Super. 266, 285-86 (App. Div. 2008) (noting a parent harmed her children through educational neglect by allowing them to be deprived of the physical ability to attend school).
>
> [N.J. Div. of Child Prot. & Permanency v. S.D., 453 N.J. Super. 511, 519 (App. Div. 2018).]

A parent or guardian must meet the statutory requirements of N.J.S.A. 18A:38-25 in order to satisfy the "minimum degree of care" contemplated under N.J.S.A. 9:6-8.21. Stated differently, a parent educationally neglects a child when he or she fails to "cause [a school-aged] child regularly to attend the public schools . . . or a day school . . . or to receive equivalent instruction elsewhere than at school." N.J.S.A. 18A:38-25; See N.J. Div. of Child Prot. & Permanency v. A.P., No. A-1545-16 (App. Div. Mar. 16, 2018) (slip op. at 9-10), certif. denied, 235 N.J. 202 (2018).

Here, Judge Cavanaugh considered B.C.'s argument that the children's absences were due to various illnesses, but the judge questioned the long-standing pattern of unexcused absences and found they could not have resulted entirely from illnesses. The judge surmised:

> [y]ou don't have the flu one week one day, have the flu the next week one day, wait two more weeks and have

the flu another day. The same with the stomach virus, and the same with the pneumonia. They are distinct events. That does not explain how there are absences on essentially . . . a weekly basis.

The judge also addressed the children's habitual tardiness, stating:

And this idea that they -- that you were trying to teach them responsibility, at what point does it show that that's not working? At what point does one realize that this isn't working, and that they've got to get to school, and something else has to be done? September, October, November, December, January, February, March, April, May, June[,] tardies throughout. Tardies throughout.

We note that B.C. admitted she knew of the children's lateness and was aware they were "fooling around" when they walked to school. Although B.C. told the caseworker she would begin driving the children to school to remedy this issue, there was no meaningful change in the children's punctuality after B.C. made this representation.

Given our deferential standard for the review of Judge Cavanaugh's factual findings, we are satisfied there is no basis to disturb her determination that B.C. failed to meet the minimum standard of care for her children and was responsible for the children's educational neglect.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-4745-18T3