# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2391-21

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.C.,

      Defendant-Appellant,

and

B.W. (deceased),

      Defendant.

_____

IN THE MATTER OF
A.C., a minor.

_____

      Argued June 7, 2022 – Decided July 11, 2022

      Before Judges Sumners and Vernoia.

      On appeal from interlocutory orders of the Superior
      Court of New Jersey, Chancery Division, Family Part,

Monmouth County, Docket Nos. FN-13-0067-22 and FD-13-0427-22.

Daniel Fraidstern, Assistant Deputy Public Defender, argued the cause for appellant M.C. (Joseph E. Krakora, Public Defender, attorney; Daniel Fraidstern, of counsel and on the briefs).

Kevin Lauerman argued the cause for respondents A.W. and R.W. (The DeTommaso Law Group, LLC, attorneys; Michael J. DeTommaso, of counsel and on the brief).

Jacalyn M. Estrada, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacalyn M. Estrada, on the brief).

Jacqueline Pham, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Jacqueline Pham, of counsel and on the brief).

PER CURIAM

This matter comes to us on an emergent appeal by defendant M.C. (Michael)[1] seeking review of the Family Part March 29, 2022 orders in a Title

---

[1] We use a pseudonym to refer to the child and initials to refer to the parties and other related individuals to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

A-2391-21

30[2] non-dissolution custody action (FD) filed by respondents A.W. and R.W., resource parents and maternal grandparents of Michael's daughter, A.C. (Alicia); and a Title 9[3] abuse and neglect complaint (FN) filed by respondent New Jersey Division of Child Protection's (Division).

In the FD matter, the judge determined that under V.C. v. M.J.B., 163 N.J. 200 (2000), the maternal grandparents made a prima facie showing of psychological parenthood based solely on their certifications without conducting an evidentiary hearing. In the FN matter, the judge allowed the maternal grandparents to participate without filing a motion to intervene, to have access to the Division's confidential case file, and to conduct discovery. Having considered the arguments presented in light of the record and applicable law, we reverse and remand for an evidentiary hearing to determine whether the maternal grandparents are Alicia's psychological parents, and reverse the order allowing them access to the confidential files and to conduct discovery.

---

[2] N.J.S.A. 30:4C-11 to 15.4.

[3] N.J.S.A. 9:6-1 to -8.114.

A-2391-21

Born in June 2014, Alicia is the daughter of B.W. (Brittany) and Michael. Due to Brittany and Michael's respective substance abuse addictions and Brittany's mental health issues, the Division was involved with the family from 2015 through 2018, when Brittany accepted the Division's services and achieved sustained sobriety, allowing her to safely parent Alicia. From October 2018 to December 2021, Alicia lived with her mother in Marlboro Township and had supervised visits with her father.

On the morning of December 4, 2021, Michael found Brittany lifeless on her living room couch, having died of a drug overdose. Alicia was asleep in her room at the time. Michael admitted to using cocaine with Brittany and sleeping over the prior night after Alicia went to bed. The Division conducted a Dodd[4] removal of Alicia that evening after being notified by the police of Alicia's situation. Alicia was placed in resource care with her maternal grandparents,

---

[4] "A 'Dodd removal' refers to the emergency removal of a child . . . without a court order, pursuant to the Dodd Act, which . . . is found at N.J.S.A. 9:6-8.21 to -8.82. The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974." N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010). When the Division removes a child from a parent's care on an emergent basis, the Family Part must "hold a hearing on the next court day, whereby the safety of the child shall be of paramount concern." N.J.S.A. 9:6-8.31.

who lived in Moorestown. The Division claimed it did not consider placing her with her paternal grandparents who lived in New York because the out-of-state approval could not be immediately obtained and it would have required Michael, who lives with them, to find alternative housing.

Following its investigation, the Division filed an order to show cause for care, custody, and supervision of Alicia and appointed a Law Guardian for Alicia. The FN complaint alleged concerns about Michael's history of substance abuse, including using drugs in Alicia's presence and that he used cocaine on the night of Brittany's fatal drug overdose.

At the subsequent order to show cause hearing on December 7, a Division caseworker testified regarding Alicia's desire to stay with her father. The caseworker stated that Michael convinced Alicia that she could not be with him at that time. Michael consented to the Dodd removal, and the Division's application for custody was granted. The trial judge ordered Alicia to remain in resource care with her maternal grandparents, while her paternal grandparents were explored as another placement option. In the meantime, Michael was granted daily phone contact with Alicia. The Division was ordered to refer Alicia to mental health services, including grief counseling, and Michael was

5

ordered to undergo substance abuse evaluations. The judge also ordered Michael could have supervised visits with Alicia.

About two weeks later, the parties reconvened to address the Division's order to show cause. Michael requested to be reunified with his daughter. Both the Division and Law Guardian opposed because he missed three substance abuse evaluations and recently tested positive for "various substances" while in a methadone program. The judge denied Michael's request but granted him extended visits with Alicia—including overnights, weekends, and an extended Christmas visit—all to be supervised by the paternal grandparents and paternal aunt, and the judge allowed him to continue his daily phone calls with her. The judge reaffirmed her prior order that Alicia have grief counseling because it had yet to be arranged.

Thereafter, Michael successfully participated in a methadone maintenance/intensive outpatient program. He also had consistent weekend visitations with Alicia, supervised by his parents or aunt.

On January 18, 2022, the maternal grandparents filed a fifty-eight-page FD petition against Michael seeking custody of Alicia on the basis that they were her psychological parents, despite the Division being the legal custodian of Alicia. Michael was not listed in the petition as Alicia's legal custodian. To

6

support their claim, the maternal grandparents' submitted certifications emphasizing their psychological connection to Alicia and detailing Michael's unfitness.

Three weeks later, a case management conference was conducted for both the FN and FD matters. After being informed that the Division, the Law Guardian, and Michael had not been provided with the FD petition, the judge provided them copies, but only allowed them approximately fifteen minutes recess to review the petition before reconvening. The judge then decided that the FD and FN matters would be dealt with simultaneously as to custody and parenting time only. While acknowledging that the FN proceeding was confidential, the judge reasoned the custody and parenting time issues overlapped and all other issues, including the "compliance issues," would be addressed separately under the FN proceeding.

Michael again requested reunification with Alicia as well as unsupervised visits, this time with the support of the Division and the Law Guardian. The Division contended that due to Michael's ongoing compliance with services, and given the negative results for all his random drug screens in January, it no longer sought a substance abuse evaluation for Michael. The Division also reported that it had "not established" the allegations of abuse and neglect against Michael

and, therefore, a Title 9 fact-finding was unnecessary. The Division therefore recommended reunification should take place in New York, with supervision by the paternal grandparents and aunt until there was satisfaction with Michael's continued compliance with substance abuse treatment. In support of reunification, the Law Guardian contended Alicia felt safe with her father and enjoyed her visits with him. Nonetheless, the judge denied Michael's reunification request.

Michael requested that the FN case be decided separately from the FD case. The Division and the Law Guardian agreed. The judge disagreed, deciding to maintain the "status quo" and schedule a best interest hearing to resolve the custody issue.

With respect to the FD case, Michael argued it should be stayed pending the determination of the FN case, so that he could have the opportunity to remediate the problems that led to Alicia's removal. The judge disagreed, determining that there had been no removal from the father since he did not have legal or residential custody of Alicia.

Michael then requested an imminent risk hearing pursuant to N.J.S.A. 9:6-8.32 and dismissal of the FD petition for "fail[ure] to name the proper parties, . . . no motion to intervene, and . . . [in]sufficient time [for him] to

remediate the situation that led to the child's placement in foster care." He argued that given the procedural posture of the case, the judge should be using an imminent risk standard because Alicia had been removed from his care pursuant to a FN case. The Law Guardian agreed. Citing Watkins v. Nelson, 163 N.J. 235 (2000), the Law Guardian argued that the maternal grandparents had not met their burden of demonstrating Michael was unfit or that they were Alicia's psychological parents, thus a best interest hearing would be "premature."

The judge rejected these arguments as well. She stressed that had Michael been a fit parent, "he would've had custody [of his daughter] . . . throughout his time as her father."

Additionally, the Division argued the FD custody case be dismissed because the maternal grandparents did not file a motion to intervene and argued that a prima facie case of psychological parentage had not been established. The Division also asked the judge to require the maternal grandparents, as Alicia's resource parents, comply with the Division's licensing requests. Both requests were denied.

In sum, the judge ordered that Alicia remain in the legal and physical custody of the Division and in the physical custody of the maternal grandparents.

A-2391-21

Furthermore, the judge reaffirmed her prior order that Alicia receive grief counseling as it had not been done. The judge later amended the order to clarify that Alicia was to remain in the Division's legal and physical custody; and the Division placed her with her maternal grandparents under presumptive eligibility due to their past designation as approved supervisors over Brittany.

The maternal grandparents subsequently filed a motion requesting: adjournment of the best interests hearing scheduled for March 14; access to the Division's FN file subject in camera review by the judge to decide what is relevant to their claim; Michael submit to various forms of drug testing and screenings and a psychological evaluation and risk assessment; permission to have party and non-party depositions; and authorization of the release of unredacted Marlboro Township police reports concerning Michael. This was followed by their emergent application to suspend Michael's visitation until a "neutral individual" was appointed to supervise his visits with Alicia.

The judge heard the motions and converted the originally scheduled best interest hearing to a case management conference. The judge initially proceeded with the FN case outside the presence of the maternal grandparents and their counsel. The Division reported that Alicia no longer wanted to call the

grandparents on the weekends while visiting her father and was refusing to do so.

The judge determined the maternal grandparents made a prima facie case for psychological parentage, stating:

> The only certifications [I] have in this case are from the [maternal grandparents].  The only sworn statements I have are from the maternal grandparents, who both have set forth under the law [in] V.C. [v.] M.J.B. . . . [and] Watkins [v.] Nelson . . . . [T]he only ones who have provided any proofs whatsoever are the maternal grandparents.  And they have indicated that . . . they have lived with the child.  The mother, before she passed away, . . . fostered the[ir] relationship with the child.
> 
> The maternal grandmother, . . . set forth extensively in her certification how she has performed parental functions for the child, and that a bond has been formed. . . . [W]e have nothing from the father; no certification, no response, nothing.
> 
> . . . .
> 
> . . . [The maternal grandparents] made out a prima facie case. . . . [T]he case isn't over.  The [final] decision hasn't been made. . . . [B]ut they have provided a basis for their request.  The child herself spoke about having her own room at . . . their home, having her own bedroom at their home.  So that's in the complaint.

The judge rejected Michael's contentions that there was a lack of evidence to find that the maternal grandparents were psychological parents, that he was an unfit parent, and that he needed additional drug and alcohol testing.  The

11

judge ordered that both the maternal grandparents and Michael could request psychological evaluations, best interest evaluations, and depositions of each other. The judge did not consolidate the matters because Michael's counsel would be representing him in both the FN and FD dockets. Michael's request for a stay to seek interlocutory appeal was denied.

On April 6, we granted Michael's application for permission to file an emergent appeal. His subsequent emergent motion for leave to appeal and for a stay pending appeal was also granted.

## II

Legal decisions of Family Part judges are reviewed under the same de novo standard applicable to legal decisions in other cases. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019); Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013). Nonetheless, this court "review[s] the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." N.J. Div. of Youth &

<u>Fam. Servs. v. F.M.</u>, 211 N.J. 420, 427 (2012). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" <u>Thieme</u>, 227 N.J. at 283 (quoting <u>Cesare</u>, 154 N.J. at 411-12). That deference, however, is still contingent upon the trial court's findings being based upon evidence within the record. We owe no deference a trial judge's conclusions that are not supported by credible evidence in the record. <u>N.J. Div. of Child Prot. & Perm. v. S.G.</u>, 448 N.J. Super. 135, 142-43 (App. Div. 2016).

III

Before us, Michael, joined by the Division and the Law Guardian, contends the trial judge erred in finding that the maternal grandparents made a prima facie showing that they are Alicia's psychological parents under <u>V.C.</u> based solely on the grandparents' certifications without first conducting an evidentiary hearing to determine the grandparents' psychological parenthood or Michael's parental unfitness. Additionally, they argue that because the maternal grandparents did not petition to intervene in the FN case, the judge erred by holding the FN and FD hearings together; granting the disclosure of confidential Division files to the maternal grandparents; allowing discovery to the non-party resource maternal grandparents; and requiring Michael to undergo evaluations and testing without first establishing his unfitness or the grandparents'

psychological parentage. The Division also argues that because the maternal grandparents have no standing in the FN proceeding, the judge improperly allowed them to participate in the matter.

The maternal grandparents maintain that their certifications made a prima facie showing of their psychological parenthood, and the failure to rebut their certifications shows there's no genuine factual dispute regarding their psychological parenthood. They also argue Michael's unfitness is self-evident by his admitted drug relapse in December; therefore, the trial judge properly declared them Alicia's psychological parents and allowed discovery prior to the best interests hearing.

## IV.

On the issue of custody, the best interests of the child is the trial judge's primary consideration. Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). Where, however, a third party seeks custody, a two-step analysis is conducted. In K.A.F. v. D.L.M., we pronounced:

> The first step requires the court to determine whether the presumption in favor of the legal parent is overcome by either a showing of "unfitness" or "exceptional circumstances." Watkins, . . . 163 N.J. at 247, 254. In Watkins, the Court emphasized that one of those grounds must be proven before the trial court proceeds to the second step of the analysis. Id. at 237 . . . ("That presumption can be rebutted by proof of gross

14

misconduct, abandonment, unfitness, or the existence of 'exceptional circumstances,' but never by a simple application of the best interests test."). It is only after that presumption has been rebutted that the court proceeds to the determination whether awarding custody or other relief to the third party would promote the best interests of the child. Id. at 254 . . . ; P.B. [v. T.H.], . . . 370 N.J. Super. [586,] 594 [(App. Div. 2004)] . . . .

[437 N.J. Super. 123, 134 (App. Div. 2014) (emphasis added.)]

Under Watson, unfitness is determined by the application of the parental termination standard under N.J.S.A. 30:4C-15.1(a), which provides:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

To prove psychological parentage, a party must prove:

15

(1) that the biological or adoptive parent consented to, and fostered, the petitioner's formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed the obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, without expectation of financial compensation [a petitioner's contribution to a child's support need not be monetary]; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.

[V.C., 163 N.J. at 223 (alteration in original) (quoting Holtzman v. Knott, 533 N.W.2d 419, 421 (Wis. 1995)).]

Proof that a third party has become a child's psychological parent by assuming the role of his or her legal parent who has been unable or unwilling to undertake the obligations of parenthood will suffice to establish exceptional circumstances. Id. at 219. Even so, proof of the existence of a parent-child bond is "most important," which generally "require[s] expert testimony." Id. at 226, 227. Such proof will place the third party "in parity" with the legal parent. Id. at 227.

In this case, the trial judge prematurely determined that the maternal grandparents were Alicia's psychological parents based solely on their certifications without first conducting an evidentiary hearing. Given Michael's

16

objections, the judge should not have based her decision on the maternal grandparents' certifications. We agree with Michael and the Division that under the first prong of V.C., there was no evidence that Alicia's biological and legal parents—Brittany and Michael—consented to and fostered a psychological parent relationship between Alicia and the maternal grandparents. The Division's temporary placement of Alicia with her maternal grandparents does not equate to "conferr[ing] custody upon the foster parents as required by the first prong of the psychological parent test." N.J. Div. of Youth & Fam. Servs. v. D.P., 422 N.J. Super. 583, 602 (App. Div. 2011). The grandparents "emotional ties that unavoidably developed neither result in psychological parent status nor otherwise confer an interest permitting standing to intervene in a Title [9] best interests hearing." Id. at 602-03. Moreover, we question the evidential support for the judge's finding of a "parent-child bond," as required by the fourth prong, given the grandparents' certifications that Alicia, along with Brittany, had not lived with them for four years before Brittany passed. This co-habitation absence for so many years should be addressed in an evidentiary

A-2391-21

hearing. Our remand shall not be construed as an expression of an opinion on the merits of maternal grandparents' claim to the relief requested.[5]

## V.

Michael, the Division, and the Law Guardian all maintain it was improper for the judge to join the Title 9 and Title 30 hearings together. We disagree.

"New Jersey's scheme for the protection of children against abuse or neglect is codified in Title [9] of the New Jersey Statutes." N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 108-09 (2011). In Title 9 proceedings, "[t]he safety of children is the paramount concern." Id. at 109 (alteration in original) (quoting N.J. Div. of Youth and Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010)). Title 30 governs guardianship and parental termination actions, using the best interest of the child test as the guiding principle. Id. at 110-11. "Although an abuse or neglect proceeding under Title [9] may lead to a guardianship/termination of parental rights proceeding under Title [30]," only

---

[5] As noted, the court granted the maternal grandparents' requests for discovery relevant to a best interest determination—including their requests for comprehensive drug and alcohol analysis, hair follicle test, and psychological evaluation of Michael; bonding evaluations; and production of unredacted police reports from Marlboro. For the reasons we have explained, the court erred by granting the requests for discovery in the FD matter based on its incorrect determination that the maternal grandparents made a prima facie showing of psychological parentage. We therefore reverse those portions of the court's order granting the maternal grandparents' discovery requests.

Title 9 governs abuse and neglect hearings by the Division. Id. at 111-12; N.J.S.A. 9:6-8.33 and 8.44. "The statutory schemes are distinct, and the Division may proceed concurrently but separately under both." N.J. Div. of Youth & Fam. Servs. v. N.D., 417 N.J. Super. 96, 109 (App. Div. 2010).

> When a judge has given the Division authority and responsibility for the care and supervision of a child removed from his home pursuant to Title 9 and Title 30, the Division may proceed under Title 30, irrespective of a finding of abuse or neglect. However, when the abuse or neglect proceeding is terminated without a finding that the allegations in the complaint are substantiated, the Title 9 action should be dismissed after exercise of jurisdiction under Title 30 . . . .
>
> [Ibid. (citations omitted).]

Thus, "[t]he outcome of the fact-finding hearing will dictate whether the court dismisses the Title 9 action or conducts a dispositional hearing." Id. at 115. A noncustodial parent who obtains full-time care of a child after the initiation of child-protection proceedings "may always initiate a request for change in custody." N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 402 n.3 (2009).

"When custody issues become intertwined with child-protection actions, then dispositional questions that lie at the intersection of the two matters become complicated by a parent's delay in achieving circumstances that make it safe for

the child to return to the former custodial parent." N.J. Dept. of Child. and Fams., Div. of Youth & Fam. Servs. v. I.S., 214 N.J. 8, 41 (2013). However, "a noncustodial parent who obtains full-time care of a child after the initiation of child-protection proceedings 'may always initiate a request for a change in custody,' which involves a changed[-]circumstances inquiry and, ultimately, becomes a best[ ]interests analysis." Id. at 40 (quoting G.M., 198 N.J. at 402 n.3). The parent to whom custody was temporarily transferred during the child-protection litigation has the burden of proving placement with them is optimum under the best interests standard. Id. at 40–41. Even if this process is not followed "precisely," placement with the parent to whom custody was temporarily assigned is suitable if returning the child to the parent from whom she was removed would have been "[in]consistent with the court's continued responsibility to act in the best interests of [the child]." Id. at 40, 41.

"Judges who handle FN and FD dockets may choose to handle the matters separately or at the same time." B.C. v. N.J. Div. of Child Prot. & Perm., 450 N.J. Super. 197, 206 (App. Div. 2017). Yet, linking a Division-instituted FN action with an FD application for custody is not a typical proceeding and requires the court and counsel to take particular care to ensure the protection of the parents' rights, especially when custody of the child in the FD action is

sought by someone other than one of the parents. See N.J. Div. of Child Prot. & Perm. v. S.D., 453 N.J. Super. 511, 525 (App. Div. 2018). "Although it is preferable for the [judge] to ensure that there [are] separate and distinct proceedings at which Title 30 actions are adjudicated to disposition and [FD] custody matters are adjudicated," the "procedure may not always prevail" and a "consolidated procedure" may not necessarily result in any cognizable harm to the child. I.S., 214 N.J. at 41. Notably, "[a] [judge's] technical designation of a hearing as FD or FN should not hamper the court's mission to safeguard the welfare of children." S.D., 453 N.J. Super. at 525. "When unusual procedures are undertaken, however, it is crucial to ensure that the parents are represented by counsel." Ibid.

Based upon these guidelines and our review of the record, the trial judge did not err in deciding to hear the FN and FD cases together. Michael was represented by counsel in both matters, and the decision to combine them did not in and of itself cause harm to Alicia.

## VI.

Michael, the Division, and the Law Guardian contend it was improper for the judge to allow the maternal grandparents to have access to the Division's files in the FN matter, because the files are confidential and the maternal

21

grandparents were not parties to the FN case, did not move to intervene, nor did they meet any of the exceptions under N.J.S.A. 9:6-8.10a(b)-(g). The maternal grandparents contend a motion to intervene is not a requirement to have access to the Division's files and they meet the statutory exceptions.

The relevant provisions of N.J.S.A. 9:6-8.10a state:

> a. All records of child abuse reports made pursuant to . . . [N.J.S.A. 9:6-8.10], all information obtained by the Department of Children and Families in investigating such reports including reports received pursuant to . . . [N.J.S.A. 9:6-8.40], and all reports of findings forwarded to the child abuse registry pursuant to . . . [N.J.S.A. 9:6-8.11] shall be kept confidential and may be disclosed only under the circumstances expressly authorized under subsection[] b. . . . herein. The department shall disclose information only as authorized under subsections b., c., d., e., f., and g. of this section that is relevant to the purpose for which the information is required, provided, however, that nothing may be disclosed which would likely endanger the life, safety, or physical or emotional well-being of a child or the life or safety of any other person or which may compromise the integrity of a department investigation or a civil or criminal investigation or judicial proceeding. If the department denies access to specific information on this basis, the requesting entity may seek disclosure through the Chancery Division of the Superior Court. This section shall not be construed to prohibit disclosure pursuant to paragraphs (2) and (7) of subsection b. of this section.
>
> . . . .

b. The department may and upon written request, shall release the records and reports referred to in subsection a., or parts thereof, consistent with the provisions of . . . [the Comprehensive Child Abuse Prevention and Treatment Act, N.J.S.A.] 9:6-8.83 [to -8.114] to:

. . . .

(6) A court or the Office of Administrative Law, upon its finding that access to such records may be necessary for determination of an issue before it, and such records may be disclosed by the court or the Office of Administrative Law in whole or in part to the law guardian, attorney, or other appropriate person upon a finding that such further disclosure is necessary for determination of an issue before the court or the Office of Administrative Law;

. . . .

(19) A parent, resource family parent, or legal guardian when the information is needed in a department matter in which that parent, resource family parent, or legal guardian is directly involved. The information may be released only to the extent necessary for the requesting parent, resource family parent, or legal guardian to discuss services or the basis for the department's involvement or to develop, discuss, or implement a case plan for the child . . . .

In granting access to the Division's files, courts generally look at whether disclosure is necessary to the resolution of the case and whether the information in the files is available elsewhere. State v. Cusick, 219 N.J. Super. 452, 458-59 (App. Div. 1987). Even though the "[files] may have a tendency to provide

information, that it may have a tendency to be determinative of an issue before the Court such as credibility, . . . [it] does not mean that they are to be disclosed." Id. at 457-58. The necessity of the Division files can be found to be immaterial to the case through an in camera review. In re Z.W., 408 N.J. Super. 535, 539 (App. Div. 2009).

We conclude the trial judge erred in granting maternal grandparents access to confidential Division files without them first filing and being granted a motion to intervene, followed by the judge's in camera review of the files in accordance with Cusick and Z.W. Considering our conclusion that there was no proper determination of psychological parentage and given the maternal grandparents' failure to intervene under Rules 4:33-1 or -2, they did not have standing to proceed in the FN litigation and conduct discovery or have access to the Division's confidential records.

Moreover, viewing the grandparents' demand through the lens of their FD action, the judge failed to make specific findings of fact and state her conclusions of law and rationale for granting them access to the Division's files pursuant to Rule 1:7-4. Even if it was proper for the trial judge to grant maternal grandparents access to the confidential Division files, the judge failed to conduct

in camera review of the files to determine necessity and potential.  Therefore, the grant of access to the Division files was improper.

Affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2391-21