# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1158-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.P.,

      Defendant,

and

C.L.,

      Defendant-Appellant.

_____

IN THE MATTER OF N.L.,
C.L., JR., and CA.L.,

      Minors.

_____

Submitted January 8, 2019 - Decided May 2, 2019

Before Judges Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0052-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Victor E. Ramos, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; David G. Futterman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant C.L. appeals from a September 28, 2017 order terminating this Title 9 matter following his three children having a year before been returned to their mother M.P., continuing his supervised visitation, directing that further parenting time orders would be entered under the parties' FV docket, and denying his request for a dispositional hearing. C.L. contends dismissing the Title 9 case with restraints on his parenting time without a dispositional hearing denied him due process. Having reviewed the record, we do not agree and affirm the order.

This abuse and neglect matter had been pending for over four years when the court finally dismissed it at the request of the Division of Child

2

A-1158-17T1

Protection and Permanency. When it began in July 2013, C.L. and M.P. were living together with their children as a family. The Division filed its complaint for care and supervision after receiving reports from the couple's school-aged children about the fighting between their parents, which had brought the police to their home.

The court granted the Division care and supervision of the children, restrained C.L. from the family home and supervised his parenting time. Two months later, C.L. stipulated to abuse and neglect, admitting he had engaged in verbal arguments with M.P. in front of the children causing them to be fearful and upset, and placing them at substantial risk of harm. The court entered an order continuing legal custody in the parents with physical custody to M.P. and detailing the services to be completed. Although the order finding abuse and neglect provided "[t]hat the provisions concerning custody and services in the attached disposition order are in force pending compliance review and further order of the court," the box next to "Case Management Review" order and not "Dispositional" order was checked.

Over the course of the ensuing year, C.L. completed substance abuse treatment and domestic violence counseling; supervision of his parenting time was lifted; and physical custody was returned to both parents. Just as the court

3

was poised to dismiss the litigation at C.L.'s request at the end of 2014, the police were again called to intervene in a dispute between the parties in the early morning hours of December 26, when C.L. was at M.P.'s home in violation of a court order.

On January 30, 2015, the court entered a final restraining order against C.L. after finding he sexually assaulted M.P. on January 25. His parenting time was again ordered to be supervised.

In July 2015, M.P. was arrested for child endangerment for leaving the children home alone. The Division filed an amended complaint for custody, and the children were placed by agreement with their maternal grandmother because C.L. could not assume their care. In August, C.L. was arrested for driving under the influence. He was convicted and sentenced to six months in the county jail in March 2016.

In July 2016, the court approved the Division's permanency plan to return the children to M.P. and they were thereafter reunited with her. Following C.L.'s release from jail and completion of a substance abuse program, he had overnight unsupervised parenting time with the children throughout the remainder of 2016. At the end of 2016, the case again appeared ready for dismissal as both parents' circumstances had stabilized.

A-1158-17T1

In January 2017, however, C.L. admitted a one-time relapse of cocaine use with his new girlfriend. C.L.'s parenting time was again ordered to be supervised. He engaged in an extended substance abuse evaluation and by June had resumed unsupervised parenting time with the children. At a compliance review on June 22, 2017, the court restored C.L.'s overnight parenting time without objection from the Division. M.P. likewise supported overnight visitation, stating "the children need and want more time with their father." C.L.'s counsel pressed for dismissal of the case, saying "both the parents are doing very well and . . . there's not safety concerns with either one of them." Counsel represented that "certainly my client wants to dismiss this case," and the court indicated it might well dismiss when the matter returned at the end of September.

On September 16, however, police in C.L.'s town responded to a report of a heavily intoxicated man, later identified as C.L., lying on someone's front lawn. C.L. admitted he had been drinking and requested a ride home. The police accommodated him, and dropped him off at his residence. A few hours later, M.P. contacted the police to report their eleven-year-old daughter had telephoned, saying her father "'didn't look right' and was bumping into things." When the police conducted a welfare check, they found him "showing obvious

signs of intoxication." The parties' daughter and her two brothers were fine, but C.L. and M.P. agreed they should return home to their mother.

At the hearing on September 28, the Division's previously served September 20 court report, including the police report from the September 16 incident, was admitted in evidence on consent of the parties. Noting the children continued in the care of M.P., the Division asked that the case be dismissed with C.L.'s parenting time to be supervised. The deputy attorney general advised the Division was willing to arrange a substance abuse evaluation for C.L. as well as refer him to a treatment program and provide visitation until the Division closed the case, but that visitation thereafter should be through Bergen County's Division of Family Guidance. The deputy argued C.L.'s relapses were becoming a predictable pattern, and there was no reason for the Division's continued involvement as the children had been safely in their mother's care for over a year.

Counsel for M.P. agreed. While noting C.L.'s relapse was tragic "because the children so much want to be with him and see him and were enjoying the overnights with him," she argued it was unfair to M.P. to hold the case open any longer. M.P. pledged she would arrange to transport the

children to Bergen Family Guidance, if that was the plan, to ensure the children could see their father regularly.

The Law Guardian also supported dismissal. Although noting she had been hoping for "a dismissal without restraints," because the parties' sons, then thirteen and eight, had expressed an interest in continuing unsupervised overnights, she conceded that course, given their father's relapse, was "highly unlikely." She also advised that the parties' daughter "was more affected by the situation and upset by what had happened." Expressing the hope that C.L. would work to have the restraints lifted, because the children "were all really very happy to have contact with their dad," the Law Guardian agreed the case should be closed with an order supervising C.L.'s parenting time.

C.L. objected to the court closing the case. His counsel explained that C.L.'s finances were "very tight" and he did "not have the wherewithal to pay for treatment." Counsel further argued that dismissing the case with restraints would leave C.L. without counsel to attempt to have those restraints lifted. Counsel asserted he needed the Division's assistance to address his most recent relapse, which he claimed could not be assured without court involvement. Finally, counsel argued there were "a lot of unanswered questions" and "a lot of logistical concerns if this case were to be dismissed with restraints,"

7

including whether "the children will definitely be brought to Bergen Family Guidance." C.L.'s counsel asked the court to keep the case open so C.L. could "get everything in line . . . to get the treatment" he needs, or at least hold a dispositional hearing to determine whether restraints were necessary and what would be required to have them lifted.

In ruling to dismiss the case, the court noted it had been open for four years, and this was not C.L.'s first relapse. The court acknowledged that when C.L. "is engaged, he works very hard, but . . . he's relapsed on several occasions, relapsed on cocaine and then this last situation was so concerning because the children were actually there." Noting C.L.'s girlfriend had been recently discharged unsuccessfully from her own substance abuse treatment program, the court found "there just seems to be a real lack of motivation and ability for [C.L.] to maintain sobriety over the long term." The judge concluded:

> [T]his court is a court that's here to protect children and I'm certainly well aware that part of that responsibility includes assisting the family in addressing their issues so that they can be safe parents for the children.
>
> But in this particular situation, I think it would be imminently unfair to the children and not in their best interest and certainly not necessary from a health, safety or welfare point of view to keep this case open

in litigation when we have gotten . . . to this particular point.

In response to C.L.'s concerns about "unanswered questions," and the need for a dispositional hearing, the court responded it would "spell out in the order what exactly [C.L.] needs to do in order to have the restraints lifted in the future." In addition to terminating the litigation, the order the court entered provided:

> [C.L.] is entitled to supervised visitation by the Division until their case closes. Upon completion of the Division's involvement, [C.L.] shall arrange parenting time under the FV docket (FV-02-1332-15) through Bergen Family Guidance and [M.P.] shall transport the children to and from visits. [C.L.] shall submit to an updated substance abuse evaluation with the Division's [certified alcohol and drug counselor] & [the] Division represents that [it] will assist C.L. with securing treatment.

> [C.L.] will comply with the recommendations of [the] updated substance abuse evaluation [and] upon compliance he will submit to an updated substance evaluation to document that he has achieved a sustained period of sobriety for not less than [six] months.

> Defense request for a dispositional hearing is denied.

The court also amended the FV order to conform its terms.

9

C.L. argues his due process rights were violated by the court's "perfunctory" dismissal of the case with restraints on his parenting time "without conducting a dispositional hearing required when ordering such restraints" and that any restraint on his contact with his children "could not be entered beyond a specified period" in accordance with N.J.S.A. 9:6-8.55.

The Division and the Law Guardian counter that the court conducted a dispositional hearing immediately after C.L. stipulated to abuse and neglect of the children in 2013, continuing legal custody in both parents and physical custody in M.P. Contending the central issue to be decided at the dispositional hearing "is whether the child may be safely returned to the custody of the parent from whom the child was removed," N.J. Div. of Youth & Family Servs. v. N.D. (In re T.W.), 417 N.J. Super. 96, 107 (App. Div. 2010), the Division and the Law Guardian note the children were returned in 2016 to M.P., the same parent from whom physical custody was removed in 2015 when the Division filed its amended complaint. Arguing the children had been safely in M.P.'s custody for over a year when the case was dismissed and that C.L. had notice of the impending dismissal in June 2017, and indeed had advocated for dismissal, they argue no further dispositional hearing was necessary. The Law Guardian adds that although enforcement of the FN order

10

supervising C.L.'s parenting time is limited to one year, the conforming FV order endures until altered by the court.

C.L. asserts in reply that he "demonstrated" at the September 28 hearing that "the circumstances surrounding the September 16 incident presented a contested issue of material fact" requiring resolution at an evidentiary hearing "on the dispositional question of visitation" before the court entered a dismissal order supervising his parenting time. He contends amending the FV order without a dispositional hearing in the FN case runs afoul of our recent opinion in New Jersey Division of Child Protection and Permanency v. S.D., 453 N.J. Super. 511 (App. Div. 2018), and argues the dismissal order should be reversed and remanded and a combination FN/FV "dispositional/evidentiary hearing" conducted as required by statute and S.D.

The law is well settled that a dispositional hearing is a critical stage in a Title 9 case, which "must be conducted 'with scrupulous adherence to procedural safeguards.'" N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 401 (2009) (quoting N.J. Div. of Youth & Family Servs. v. A.R.G., 179 N.J. 264, 286 (2004)). Having reviewed this lengthy record, we are satisfied the court conducted an appropriate dispositional hearing in September 2013, immediately after C.L. stipulated to abuse and neglect of his three children,

11

when it entered the order continuing care and supervision of the parties' children with the Division, legal custody with their parents, physical custody with M.P., supervised C.L.'s parenting time and directed them to comply with services.

The record makes abundantly clear the following four years were consumed by the Division's efforts to provide services to assist C.L. address the substance abuse and domestic violence issues that had negatively affected his relationship with M.P. and their children, and to assist M.P. address the depression and dependency that impaired her ability to consistently care for them.  By June 2017, the parties had finally separated and their respective circumstances had stabilized.  The children had been safely in M.P.'s physical custody for nearly a year and C.L. was exercising unsupervised overnight parenting time.  C.L. asked the court to dismiss the case, and the court indicated it would likely do so at the next hearing.

By the time of that hearing, C.L. had, unfortunately, again relapsed, a fact he did not contest at the final hearing.  The court dismissed the litigation as C.L. had asked it to do at the prior hearing, but did so with an order supervising his parenting time and directing that further orders as to custody

and parenting time would be entered under the existing FV docket. Under the circumstances, we find no error.

As we recently noted in S.D., "[p]arents do not have the right to extend litigation indefinitely until they are able to safely care for their children." 453 N.J. Super. at 524. Contrary to C.L.'s representations on appeal, he did not contest the fact of his relapse before the trial court or even seriously contest the supervision of his parenting time in light of his long history of substance abuse. We therefore reject his claim that an evidentiary hearing was required. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (noting a plenary hearing is required only when "there is a genuine and substantial factual dispute regarding the welfare of the children").

C.L.'s counsel advocated for the Division to provide a substance abuse evaluation and for M.P. to transport the children to and from his supervised visitation because his driving privileges remained suspended; both of which the court ordered. The court also detailed exactly what C.L. needed to do to apply for unsupervised visitation, as his counsel requested, and conformed the parties' existing FV order accordingly.

The court scrupulously attended to the parties' rights throughout the entire proceedings and C.L. had the benefit of counsel in the hearing

A-1158-17T1

establishing the supervision of his parenting time. Although the court could have conducted another dispositional hearing before dismissing the case, <u>see</u> <u>N.J. Div. of Youth & Family Servs. v. J.D.</u>, 417 N.J. Super. 1, 20 (App. Div. 2010) (noting "[a]s a matter of practice, several dispositional hearings may be held" before the Title 9 litigation is concluded), because no plenary hearing was necessary, it did not alter the parties' custody arrangement and C.L. had notice of the Division's intent to dismiss the litigation, and, indeed, had advocated for dismissal himself, we do not find the failure to do so here constituted reversible error, <u>see</u> <u>A.R.G.</u>, 179 N.J. at 286-87.

Because we cannot find the trial judge abused her considerable discretion in determining it was not in the best interest of the children's health, safety and welfare to continue the litigation, and do not find defendant's rights were abridged in the order dismissing it, we affirm. C.L.'s remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1158-17T1